**James YOUNG, Appellant**

v.

**The STATE of Texas, Appellee.**

No. 12–06–00280–CR.

Court of Appeals of Texas,
Tyler.

Nov. 30, 2007.

⚖️16

Richard Kennedy, Tyler, TX, for appellant.

Michael J. West, for appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

## OPINION

JAMES T. WORTHEN, Chief Justice.

James Young appeals his conviction for possession of child pornography, for which he was sentenced to imprisonment for ten years. In three issues, Appellant argues that the evidence was insufficient to support the jury's verdict and that the trial court erred in its admission of certain evidence. We affirm.

### BACKGROUND

Appellant was charged by indictment with possession of child pornography.[1] Appellant pleaded "not guilty," and the matter proceeded to jury trial.

C.Y., Appellant's daughter, who was sixteen years old at the time of trial, testified

---

1. *See* TEX. PENAL CODE ANN. § 43.26(a) (Vernon 2003).

as the State's first witness. C.Y. testified that she smoked marijuana and methamphetamine with Appellant. C.Y. stated that she and her father's friend, Dusty Slayton, would smoke methamphetamine while Appellant took pictures of them. C.Y. further testified that Appellant would take her to Wal–Mart and take photographs of her in negligee tops. Moreover, C.Y. stated that while smoking methamphetamine on one occasion, Appellant had her pose in her underwear, with her finger between her legs touching her vagina while Appellant took her picture. This picture was admitted into evidence as an exhibit. C.Y. further stated that Appellant pierced her clitoris. C.Y. testified that she ultimately ran away from home because she could not take it anymore. C.Y. admitted that she had previously denied that Appellant had taken any pornographic pictures of her and pierced her clitoris because Appellant was her father and she did not want to lose him.

Dusty Slayton testified next on the State's behalf. Dusty testified that she and her husband, Brad Slayton, and their children lived with Appellant and C.Y. for a period of time. Dusty further testified that she used marijuana and methamphetamine with C.Y. Dusty stated that during that time Appellant would get high on methamphetamine and take pictures. Dusty further stated that Appellant had taken provocative pictures of her and had discussed putting such pictures on a pornographic web site. Dusty testified that after she and Brad ceased living with Appellant, she became aware of pornographic pictures of C.Y. that were stored in a safe in their possession. Dusty testified that neither she nor, to the best of her knowledge, Brad took those pornographic pictures. Moreover, Dusty stated that Appellant told her that he could pierce her clitoris for her because he had pierced C.Y.'s. Dusty further stated that she had pleaded guilty to sexual assault and, as a result, would soon be incarcerated.

John Michael Penny testified as the State's next witness. Penny testified that he was C.Y.'s godfather. He stated that, at the request of Appellant's ex-wife, Debbie, he looked at some computer discs he thought belonged to Appellant.[2] Penny testified that the discs were found in a box that belonged to Appellant. Penny further testified that upon opening the discs in his computer, he observed an image of Appellant kissing C.Y. in a manner he found to be inappropriate. Penny stated that he did not take the pictures he found on the discs. Penny further stated that he had tried to take C.Y. to Oklahoma because she no longer wished to be with Appellant because of the things he was doing to her. Penny admitted that he had previously been convicted of manslaughter.

Gary Wayne Simmons testified next on the State's behalf. Simmons testified that he took illegal drugs with Appellant and C.Y. Simmons further testified that he observed Appellant and C.Y. engage in what he considered to be inappropriate touching. Simmons stated that he observed Appellant take photographs of many people, including C.Y., but did not state that any of the photos he saw taken were pornographic. Simmons further stated that he did not take any pictures of C.Y. Simmons testified that C.Y. ran away to his house and he took her to the Children's Advocacy Center.

Richard Vogle testified as the State's next witness. Vogle stated that Appellant

---

**2.** Penny further stated that Debbie had expressed concern to him that Appellant was taking inappropriate photos of C.Y.

was his best friend. Vogle further stated that he never saw Appellant take any inappropriate pictures of C.Y. Vogle testified that he found some inappropriate pictures of C.Y. on a computer that he thought belonged to Appellant. Vogle denied that the computer the prosecuting attorney showed him was Appellant's computer. Vogle stated that he overheard a coworker say that there were pornographic photos contained on Appellant's computer. Vogle further stated that he did not know who had access to Appellant's computer other than Appellant.

Smith County Sheriff's Detective Anthony Dana testified next on the State's behalf. Dana testified that a tattoo/piercing shop employee told him that he performed a tongue piercing on C.Y. Dana further testified that this same person told him that they would have required a separate parental consent to perform a clitoral piercing on a minor and that they had no record of any such consent form pertaining to C.Y. for a clitoral piercing. Dana testified that he went to Appellant's residence pursuant to a search warrant and that Appellant's wife provided him the CDs he sought pursuant to the warrant. Dana stated that he located magazines under Appellant's bed depicting young girls. A picture of these magazines and also the magazines were admitted into evidence over Appellant's objection. Dana confirmed that the magazines entitled "Orient 18, Sweet and Young," "Spring Break Scandals" and a special issue of "Tight, All 18, All Teeny, All Eager to Show and Tell" were each found underneath Appellant's bed. Dana testified that Appellant contacted the authorities to report C.Y. as a runaway. Dana further testified that

Dusty Slayton, Brad Slayton, Debbie Young, and C.Y. each had access to the computer he found in Appellant's travel trailer. Dana stated that C.Y. and Dusty Slayton told him about the pictures at issue. Dana further stated that Appellant told him that he intended to give the discs containing the photographs at issue to the authorities though Debbie Young ultimately did so. Dana testified that C.Y. told him that Appellant took nude photos of Debbie Young, but that he never was able to locate any such photographs. Following Dana's testimony, the State rested.

Glen Thomas Ramirez testified as Appellant's first witness. Ramirez testified that he knew Dusty and Brad Slayton and their children and that they had lived with him for a period of time. Ramirez further testified that when the Slaytons moved out of his home, they left behind a safe. Ramirez stated that he opened the safe and found photographs of Dusty, Brad, and C.Y. Ramirez further stated that he and his wife contacted the sheriff's department to come get the pictures. Ramirez identified several pictures that he discovered in the safe, among them pictures he agreed depicted C.Y. engaged in sexual conduct.[3]

Appellant next called Kim Waits to testify, but the trial court limited her testimony pursuant to Texas Rule of Evidence 613. Before the jury, Waits testified that C.Y. appeared slightly nervous at being interviewed by Child Protective Services, but seemed "okay otherwise." The trial court similarly limited Sabrina Gordon's testimony pursuant to Rule 613. Gordon testified that Appellant and C.Y. spent time with her during the summer of 2005. Gordon further testified that she never knew of Appellant or C.Y. drinking hard liquor or

---

**3.** Among the pictures Ramirez identified, State's exhibit 82 contains three pictures of C.Y. with her breasts exposed, while State's exhibit 85 contains a picture of C.Y., who is not wearing underwear, with her finger touching her vagina. Both exhibits 82 and 85 were admitted into evidence.

smoking "ice." Gordon stated that she had no fear for her three daughters in having Appellant around them.[4]

Appellant next called C.Y. to testify. C.Y. denied speaking with Gordon about the allegations against Appellant and could not recall speaking with Waits. C.Y. testified that she did not remember the detective who investigated the case. C.Y. again stated that she originally denied that Appellant took the pictures at issue, but that she later changed her story. During the prosecuting attorney's examination, C.Y. testified that Appellant took the pictures comprising, among others, the State's Exhibits 82 and 85.[5] C.Y. confirmed that the pictures in these exhibits were of her and were taken at her house in Smith County.

Debbie Young testified next on Appellant's behalf. Debbie testified that Appellant only used methamphetamine twice, both times with her, and never used any drugs around C.Y. Debbie further testified that Penny gave her the four discs at issue. Debbie stated that she looked at the pictures on the discs and held the discs for police. Debbie further stated that she removed the discs from her purse and gave them to Detective Dana. Debbie testified that when she showed Appellant the pictures she found on the discs, Appellant was livid and in tears. Debbie further testified that the pictures from the discs contained pornographic images of C.Y. and that she had the discs for about eleven days before turning them over to police.

Jessie Seigfried testified as Appellant's next witness. Seigfried testified that C.Y. told him she had her clitoris professionally pierced and that nothing was going on at home.

Thereafter, Appellant testified on his own behalf. Appellant stated that he had smoked methamphetamine one time, but that he did not like it and was not a "druggie." Appellant denied that he had taken pornographic pictures of C.Y. or pierced her clitoris. Appellant explained that there was bad blood between him and Penny because Appellant helped Penny's wife and children get away from him. Appellant also testified that Penny had stolen a handgun from him as well as secreted C.Y. from him. Appellant stated that Vogle had hard feelings against him because Appellant barred him from participating in shows put on by Appellant's show group. Appellant further stated that he and Simmons intended to start a small engine repair service, but that the business relationship deteriorated when Appellant caught Simmons and Simmons's wife smoking methamphetamine with an infant between them. Appellant testified that Debbie attempted to buy a travel trailer from Simmons, but that the deal fell through with Simmons neither delivering the trailer nor returning Debbie's $1,700.00 payment. Appellant further testified that he offered to go with Detective Dana to retrieve two other computers of his in Emory, Texas. Appellant denied that he had intended or had given any consideration to setting up a pornographic website. On cross examination, Appellant admitted that some of the pictures of C.Y. were pornographic, but further denied any wrongdoing.

Ashley Young testified as Appellant's next witness. Ashley testified that Appellant was her uncle and C.Y. was her cousin. Ashley further testified that C.Y. asked her to take pornographic pictures with her. Ashley stated that C.Y. told her that her claim that Appellant had taken nude pictures of her was a lie and that she said it because she was mad at Appellant.

---

**4.** Gordon was later recalled and testified that C.Y. had discussed her situation with Gordon.

**5.** *See* n. 3.

Ashley further stated that C.Y. told her that she was going to put Appellant away so that she could get away from him. Thereafter, Appellant rested.

The State called Detective Dana in rebuttal. Through Dana, the State admitted photographs of the contents of a duffle bag. The subject matter of these photographs included magazines, condoms, flavored personal lubricant, and a penis pump. These items had been the subject of Dana's testimony given during the State's case in chief. At the conclusion of Dana's testimony, both parties closed and the case was submitted to the jury.

Following deliberation, the jury found Appellant guilt of possessing child pornography. The matter proceeded to a trial on punishment after which the jury assessed Appellant's punishment at imprisonment for ten years and a ten thousand dollar fine. The trial court sentenced Appellant accordingly, and this appeal followed.

### EVIDENTIARY SUFFICIENCY

In his first issue, Appellant argues that the evidence is legally insufficient to support the jury's verdict. In his second issue, Appellant argues that the evidence is factually insufficient to support the jury's verdict. Specifically, Appellant argues that there is not sufficient evidence that he possessed the photographs at issue.

### Legal Sufficiency

■ Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S.Ct. 2781, 2786–87, 61 L.Ed.2d 560 (1979); *see also Escobedo v. State*, 6 S.W.3d 1, 6 (Tex.App.-San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 320, 99 S.Ct. at 2789; *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex.Crim.App.1993). The evidence is examined in the light most favorable to the verdict. *See Jackson*, 443 U.S. at 320, 99 S.Ct. at 2789; *Johnson*, 871 S.W.2d at 186. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S.Ct. 2211, 2217–18, 72 L.Ed.2d 652 (1982).

To support a conviction for possession of child pornography, the evidence must support that the accused knowingly or intentionally possessed visual material that visually depicts, and which the accused knows visually depicts, a child younger than eighteen years of age at the time the image of the child was made who is engaging in sexual conduct. *See* TEX. PENAL CODE ANN. § 43.26(a). "Sexual conduct" means actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals, the anus, or any portion of the female breast below the top of the areola. TEX. PENAL CODE ANN. §§ 43.25, 43.26(2)(b)(2) (Vernon 2003).

■ Be it by direct or circumstantial evidence, the State must establish that the accused's connection with the contraband was more than just fortuitous. *Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App. 1995). When the contraband is not found on the accused's person or is not in the accused's exclusive possession, additional facts must affirmatively link the accused to the contraband. *See Jones v. State*, 963 S.W.2d 826, 830 (Tex.App.-Texarkana 1998, pet. ref'd). The affirmative link ordinarily emerges from an orchestration of several factors and the logical force they have in combination. *Id.*[6]

---

**6.** The list of nonexclusive factors that may be considered when evaluating affirmative links

Appellant concedes that there is evidence to support that Appellant took the pictures of C.Y. at issue. However, Appellant argues that while such evidence supports manufacture or production, it does not support that he possessed the visual material at issue. We disagree. The term "visual material" means either (a) any film, photograph, videotape, negative, or slide or any photographic reproduction that contains or incorporates in any manner any film, photograph, videotape, negative, or slide or (b) any disk, diskette, or other physical medium that allows an image to be displayed on a computer or other video screen and any image transmitted to a computer or other video screen by telephone line, cable, satellite transmission, or other method. TEX. PENAL CODE ANN. § 43.26(b)(3) (Vernon 2003).

In the case at hand, C.Y. testified that Appellant took the pictures of her comprising, among others, the State's exhibit 85. Exhibit 85 contains a picture that depicts C.Y., who is not wearing underwear in the picture, with her finger touching her vagina. In this picture, C.Y. appears to be masturbating.[7] While the record is not clear whether Appellant's camera was digital or film based, regardless of whether the aforementioned picture in Exhibit 85 was captured on film or a disk of some sort, it amounted to visual material. See TEX. PENAL CODE ANN. § 43.26(b)(3). Since, according to C.Y.'s testimony, Appellant took this picture, among others, it follows that he intentionally possessed the camera containing this visual material depicting C.Y. engaged in sexual conduct.

Examining the aforementioned evidence in the light most favorable to the verdict, we conclude that the jury could have determined beyond a reasonable doubt that Appellant possessed visual material that visually depicts a child younger than eighteen years of age who is engaging in sexual conduct. Therefore, we hold that the evidence was legally sufficient to support the verdict. Appellant's first issue is overruled.

### Factual Sufficiency

Turning to Appellant's contention that the evidence is not factually sufficient to support the jury's verdict, we must first assume that the evidence is legally sufficient under the *Jackson* standard. See *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim.App.1996). We then consider all of the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compare it to the evidence that tends to disprove that fact. See *Santellan v. State*, 939 S.W.2d 155, 164 (Tex.Crim.App.1997). Although we are authorized to disagree with the jury's determination, even if probative evidence exists that supports the verdict, *see Clewis*, 922 S.W.2d at 133, our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. *Santellan*, 939 S.W.2d at 164. Where there is conflicting evidence, the jury's verdict on

---

is set forth in *Lassaint v. State*, 79 S.W.3d 736, 740–41 (Tex.App.-Corpus Christi 2002, no pet.).

**7.** There is no statutory definition of "masturbation," so it should be given its ordinary meaning. See *McGee v. State*, 804 S.W.2d 546, 547 (Tex.App.-Houston [14th Dist.] 1991, no pet.); *Morales v. State*, No. 05–98–00255– CR, 1999 WL 185034, at *3 (Tex.App.-Dallas Apr.6, 1999, pet. ref'd) (not designated for publication). "Masturbation" is defined as "[e]xcitation of the genital organs ... by manual contact or means other than sexual intercourse." THE AMERICAN HERITAGE DICTIONARY 771 (2nd College ed.1982); *see also Morales*, 1999 WL 185034, at *3 (citing WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 1109 (2nd ed.1983)) (defining masturbation as "genital self-excitation, usually by manipulation; auto-eroticism: also called self-abuse, onanism").

such matters is generally regarded as conclusive. *See Van Zandt v. State*, 932 S.W.2d 88, 96 (Tex.App.-El Paso 1996, pet. ref'd). Ultimately, we must ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine our confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000); *see also Watson v. State*, 204 S.W.3d 404, 417 (Tex.Crim.App.2006) (evidence is factually insufficient only when reviewing court objectively concludes that the great weight and preponderance of the evidence contradicts the verdict).

We have reviewed the record in its entirety. As Appellant notes, there is testimony, including Appellant's, that contradicts C.Y.'s account that Appellant took the picture, among others, of her masturbating. Yet we iterate that our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony, *see Santellan*, 939 S.W.2d at 164, and where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *See Van Zandt*, 932 S.W.2d at 96. Our review of the record as a whole, with consideration given to all of the evidence, both for and against the jury's finding, has not revealed to us any evidence that causes us to conclude that the proof of guilt is so obviously weak or is otherwise so greatly outweighed by contrary proof as to render Appellant's conviction clearly wrong or manifestly unjust. Therefore, we hold that the evidence is factually sufficient to support the trial court's judgment. Appellant's second issue is overruled.

### ADMISSION OF EVIDENCE

In his third issue, Appellant contends that the trial court, in several instances, improperly admitted irrelevant and highly prejudicial evidence against him. Specifically, Appellant argues that the trial court erred in admitting the following evidence: (1) testimony that Appellant used or possessed methamphetamine; (2) testimony that Appellant allowed or caused C.Y. to have her clitoris pierced; and (3) testimony that Appellant had a sexual assault charge pending against him. Appellant further contends that the trial court erred in admitting exhibits consisting of the shell of a nonfunctioning computer and photos of the contents of a duffle bag, namely magazines and other sexual items.

### *Testimonial Evidence*

■ The reporter's record in the instant case contains nearly six hundred fifty pages and more than ninety exhibits. Appellant's arguments concerning the aforementioned testimonial evidence are not accompanied by citations to the record indicating where the allegedly improper testimony was first elicited or where Appellant's timely and specific objection to such evidence can be found. *See* TEX. R.APP. P. 38.1(h). We are not required to search the record in its entirety to determine whether Appellant preserved error in each instance and whether Appellant's objection comports with the various contentions raised in his third issue. *See, e.g., Powell v. State*, No. 12–98–00049–CR, 2003 WL 23096998, at *10 (Tex.App.-Tyler Dec.31, 2003, pet. ref'd) (mem. op. on remand, not designated for publication). As such, with regard to his complaints pertaining to the aforementioned testimony, Appellant has waived the error, if any, pertaining to the admissibility of such testimonial evidence. *See* TEX.R.APP. P. 38.1(h).

### *Exhibit of Nonfunctioning Computer*

■ In his complaint concerning the admission of the shell of a nonfunctioning

computer as an exhibit, Appellant similarly fails to provide record citations sufficient to allow us to determine whether Appellant properly preserved the alleged error. *Id.* Appellant initially objected to the admission of this exhibit because it was "not properly proven up." The trial court admitted the exhibit conditionally. Appellant has not provided in his brief any record citation to where he later objected to the conditional admission of this exhibit. *See Heidelberg v. State,* 36 S.W.3d 668, 673 (Tex.App.-Houston [14th Dist.] 2001, no pet.); *Lookingbill v. State,* 855 S.W.2d 66, 70 (Tex.App.-Corpus Christi 1993, writ ref'd). Moreover, Appellant's objection that the exhibit was "not properly proven up" does not comport with his argument on appeal. *See Broxton v. State,* 909 S.W.2d 912, 918 (Tex.Crim.App.1995). Therefore, Appellant has waived error, if any, pertaining to the admission of this evidence.

### Pictures of Contents of Duffle Bag

We finally consider Appellant's argument that the trial court erred in admitting Exhibit 88, which contained photographs taken of the contents of a duffle bag consisting of magazines and other sexual items.[8] We review the trial court's decision to admit evidence for abuse of discretion. *See Prystash v. State,* 3 S.W.3d 522, 527 (Tex.Crim.App.1999).

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex.R. Evid 401. Evidence that is not relevant is inadmissible. Tex.R. Evid. 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. Tex.R. Evid. 403.

*Magazines*

We first consider the three pictures of magazines contained in Exhibit 88. In order to satisfy its burden of proof, the State was required to demonstrate that the pictures at issue depicted a child engaging in "sexual conduct." *See* Tex. Penal Code Ann. § 43.26(a)(1). "Sexual conduct" includes "lewd exhibition of the genitals." *See* Tex. Penal Code Ann. §§ 43.25, 43.26(2)(b)(2). When a child is the subject of a photograph, lewdness is not to be considered a characteristic of the child, but rather as a characteristic of the photograph itself. *See Alexander v. State,* 906 S.W.2d 107, 110 (Tex.App.-Dallas 1995, no pet.). Whether the content of a photograph constitutes a lewd or lascivious exhibition of a child's genitals depends on the intent of the photographer. *Id.*

The State had previously offered testimony through Detective Dana with regard to one of the magazines pictured entitled "Hawk."[9] That a magazine purporting to

---

8. Exhibit 88 was admitted through Detective Dana during his rebuttal testimony. It contains eight pictures. Three of the pictures are of magazines. One of the pictures is of a package of "Wet N Wild" condoms. Three of the pictures are of a bottle of flavored personal lubricant, and the last of these pictures is of a penis pump.

9. Detective Dana was previously questioned concerning "Hawk," which was referred to by its caption, "Spring Break Scandals." The

record reflects that the magazine itself was already admitted as Exhibit 75. Detective Dana also testified that the duffle bag contained additional magazines such as "Orient 18, Sweet and Young" and "Tight, All 18, All Teeny, All Eager to Show and Tell." Appellant has raised no argument on appeal relating to the trial court's admission of the testimony concerning his possession of such magazines or the exhibit comprising the magazines themselves, though he raised objections to

depict young girls going wild on Spring Break [10] was found in a duffle bag underneath Appellant's bed, when considered in conjunction with C.Y.'s testimony that Appellant took the picture of her with her vagina exhibited,[11] is relevant because it tends to make more probable that Appellant's intent with regard to this photograph was that C.Y.'s exhibition of her vagina be of a lewd fashion. *See Alexander,* 906 S.W.2d at 110 (citing *United States v. Wiegand,* 812 F.2d 1239, 1244 (9th Cir.1987)) (lasciviousness not a characteristic of child photographed but of exhibition photographer sets up for audience consisting of himself or likeminded pedophiles).

Applying the Rule 403 balancing factors to this case, we first consider how compellingly the photographs served to make a fact of consequence more or less probable. *Sarabia v. State,* 227 S.W.3d 320, 324 (Tex. App.-Fort Worth 2007, pet. ref'd). At trial, Appellant contested C.Y.'s credibility. The photographs of magazines depicting young girls, in addition to supporting the "lewd" component of "sexual conduct," also tended to show that C.Y.'s testimony was truthful. While the notion of a person receiving any sort of gratification from such a magazine is repugnant, it had little potential to impress the jury in some irrational way; the activities suggested by the captions on this magazine are suggestive of the subject matter depicted in photographs for which Appellant was on trial,

that is, it leaves the impression that the subject matter consists of young girls in sexual situations. Appellant's possession of these magazines, repulsive as it may be, could be construed as less heinous than the evidence that Appellant took a picture of his fifteen year old daughter masturbating. Moreover, the State did not spend an excessive amount of time developing this evidence. Finally, the force of the State's need for the evidence was significant because the State had little more direct evidence apart from C.Y.'s own testimony with which to answer Appellant's attack on C.Y.'s credibility. Therefore, we hold that the probative value of the three photographs of the magazines is not substantially outweighed by the danger of unfair prejudice.

*Other "Sexual Items"*

▆ We finally consider Appellant's objection that the photographs depicting "other sexual items," namely a penis pump, a package of "Wet N Wild" condoms, a bottle of flavored personal lubricant, and various issues of Playboy® magazine. Based on our review of the record, with consideration given to the State's burden of proof, we cannot conclude that any of these items have a tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence. As such, we hold that the evidence was not relevant and should not

such testimony at trial. *See Johnson v. State,* 803 S.W.2d 272, 291 (Tex.Crim.App.1990), *overruled on other grounds, Heitman v. State,* 815 S.W.2d 681, 685 n. 6 (Tex.Crim.App. 1991) (party may not successfully challenge evidence admitted elsewhere without objection); *see also* Tex.R.App. P. 38.1(h); *Nolan v. State,* 102 S.W.3d 231, 236 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd) (failure to brief issue on appeal constitutes waiver of issue). In the exhibit at issue, the only magazines in question are the aforementioned issue of

"Hawk" and multiple issues of Playboy® magazine.

**10.** Hawk magazine depicted a young nude female and contained numerous captions on the cover such as "Air Head C*ck Crammed & Clueless!", "Spring Break Scandals, Young Girls Gone Wild!", and "Shocked to Be Soaked 'I Can't Believe How Wet I Get!'"

**11.** *See* n. 3.

have been admitted. *See* Tex.R. Evid. 401, 402.

As such, we must determine if the improper admission of this evidence was harmful to Appellant. The erroneous admission of evidence is nonconstitutional error under Texas Rule of Appellate Procedure 44.2(b). *See* Tex.R.App. P. 44.2(b); *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998); *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997). Any nonconstitutional error that does not affect substantial rights must be disregarded. Tex.R.App. P. 44.2(b); *Johnson v. State,* 43 S.W.3d 1, 4 (Tex.Crim.App.2001). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *See King,* 953 S.W.2d at 271 (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). In making this determination, we review the record as a whole. *See Johnson v. State,* 967 S.W.2d at 417. The presence of overwhelming evidence of guilt, though only one factor in the analysis, plays a determinative role in resolving the issue. *Motilla v. State,* 78 S.W.3d 352, 356–57 (Tex.Crim.App.2002). Other factors relevant to the harm analysis are the character of the alleged error and how it might be considered in connection with other evidence in the case and whether the State emphasized the error. *Id.* at 355–56. We may also consider the jury instructions, the State's theory and any defensive theories, closing arguments, and even voir dire, if applicable. *Id.*

In the case at hand, the State's case against Appellant was strong as C.Y.'s testimony, though contradicted, was compelling. There was also a great deal of circumstantial evidence in support of the State's case. The character of the error and how it might be considered in connection with the other evidence also militate against harm. While the erroneously admitted evidence was irrelevant and somewhat prejudicial, it was not misleading or confusing. Finally, the State did not emphasize the error. The exhibit at issue consists of eight pictures on a single page. With regard to the pictures of the Playboy magazines, little more than the name of the magazine is discernible. With regard to the three pictures of flavored personal lubricant, two are out of focus, while the bottle in the third picture contains a label no more graphic than many of the other exhibits comprising hundreds of pictures the jury saw over the course of trial. Moreover, the picture of the penis pump is rather benign. But for the previous testimony concerning Appellant's possession of such a penis pump, it is reasonable to conclude that the average viewer would not know what the item pictured was. Finally, the State made only a fleeting reference to the penis pump in its closing argument during the guilt-innocence phase [12] and no further reference to any of the pictures in the exhibit at issue during its closing argument during the punishment phase.

We conclude that, in the context of the entire case against Appellant, the admission of the aforementioned pictures of "other sexual items" did not have a substantial or injurious effect on the jury's verdict and did not affect Appellant's substantial rights. *See King,* 953 S.W.2d at 271. Thus, we disregard the error. *See* Tex.R.App. P. 44.2(b). Appellant's third issue is overruled.

---

12.  During his closing argument, the prosecuting attorney made reference to "the penis pump and some other stuff" in the context of challenging Appellant's credibility regarding his testimony that he had found the various items contained in the duffle bag in the garbage and brought them home planning to ultimately dispose of them.

*DISPOSITION*

Having overruled Appellant's first, second, and third issues, we *affirm* the trial court's judgment.