

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00010-CR

_____


JOHN PAUL WARNER, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 420th Judicial District Court
Nacogdoches County, Texas
Trial Court No. F13,490-2005


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

After hearing evidence that James Paul Warner had tussled with Officer Mack McKee of the Nacogdoches Police Department, during which the officer's finger was broken, a Nacogdoches County[1] jury found Warner guilty of assault on a public servant. In accordance with the jury's punishment verdict, the trial court sentenced Warner to an enhanced twenty-five years' imprisonment.[2] We affirm the trial court's judgment because we hold that (1) the evidence is legally and factually sufficient and (2) resisting arrest is not a lesser-included offense to assault on a public servant.

*(1)      The Evidence Is Legally and Factually Sufficient*

In two of his three appellate issues, Warner contends the evidence is legally and factually insufficient to support his conviction for aggravated assault. A legal sufficiency review requires the court to examine all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); *Pumphrey v. State*, 245 S.W.3d 85, 87 (Tex. App.—Texarkana 2008, pet. ref'd); *Young v. State*, 242 S.W.3d 192, 197 (Tex.

---

[1]This case has been transferred to this Court as part of the Texas Supreme Court's docket equalization program.

[2]The jury in this case made a factual finding that Warner had twice previously, and sequentially, been convicted of a felony offense. That factual finding permitted the jury to assess Warner's punishment within the enhanced sentencing range provided for recidivists. *See* TEX. PENAL CODE ANN. § 12.42(d) (Vernon Supp. 2008).

App.—Tyler 2007, no pet.). When factual sufficiency of the evidence is challenged, we review all the evidence admitted at trial in a neutral light, determining whether the evidence supporting the verdict is so weak or is so outweighed by the great weight and preponderance of the evidence that the fact-finder's verdict is clearly wrong or manifestly unjust. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996); *Pumphrey*, 245 S.W.3d at 87–88; *Young*, 242 S.W.3d at 199. Under this latter standard, we must afford "due deference" to the fact-finder's determinations. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006); *see Young*, 242 S.W.3d at 198. And although, when we review the factual sufficiency of the evidence, we have the ability to second-guess the fact-finder to a limited degree, we should nonetheless be deferential, with a high level of skepticism about the fact-finder's verdict required before a reversal can occur. *Roberts*, 220 S.W.3d at 524; *Young*, 242 S.W.3d at 198–99.

A person commits the offense of assault if he or she intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 22.01(a)(1) (Vernon Supp. 2008). The severity of that offense is increased if the victim of that assault was lawfully discharging an official duty and was a person whom the defendant knew to be a public servant. TEX. PENAL CODE ANN. § 22.01(b)(1) (Vernon Supp. 2008). Assault on a public servant is a third-degree felony. *Id.*

The amended indictment alleged Warner "did then and there intentionally and knowingly cause bodily injury to Mac[k] McKee . . . a person the defendant knew was a public servant while the Complainant was lawfully discharging an official duty, to-wit: handcuffing the defendant, by

3

twisting the Complainant's hand . . . ." The trial court's charge to the jury authorized Warner's conviction of aggravated assault if they found "from the evidence beyond a reasonable doubt that on or about the 9th day of November, 2005[,] in Nacogdoches County, Texas, the defendant JAMES PAUL WARNER, did then and there, unlawfully, intentionally or knowingly cause bodily injury to Mac[k] McKee, a person the defendant knew was a public servant while Mac[k] McKee was lawfully discharging an official duty, to-wit: handcuffing the defendant, by twisting Mac[k] McKee's hand, then you will find the defendant guilty as charged in the indictment." We review the evidence in this case.

Patrol Sergeant Keith Finchum of the Nacogdoches Police Department testified he was working in November 2005 and received a call related to a disturbance on Drewery Drive located in Nacogdoches, Texas. Finchum, along with officers Albert Patterson and McKee, also of the Nacogdoches Police Department, responded to the call and eventually met a suspect (later identified as Warner) walking along the road near the dispatched location. Warner told the officers that he had been in an argument with his family members about his girlfriend. Finchum eventually received information from Patterson (who had gone on to the Drewery Drive location) that Warner "had committed an arrestable offense." Finchum, acting on this information from a fellow officer, "decided to detain Mr. Warner." *See generally Farmah v. State*, 883 S.W.2d 674, 678 (Tex. Crim. App. 1994) (officer may arrest suspect based on another officer's request if requesting officer has

4

sufficient information to establish probable cause to arrest); *see also* TEX. CODE CRIM. PROC. ANN. art. 14.03(a)(2), (4) (Vernon Supp. 2008) (warrantless arrests of assault suspects).

Finchum then walked up to Warner's right side; McKee walked up to Warner's left side. McKee took Warner by his left arm and advised Warner that he would be detained until the officers could find out more information about the argument that had occurred earlier at the Drewery Drive residence. Warner did not cooperate with the officers' efforts, but instead "tensed up" so that the officer could not put Warner's arms behind his back. Warner then jerked away from the officers, turned, and ran. Finchum later tackled Warner, and the two wrestled. McKee then attempted to use his TASER device to subdue Warner. Warner, however, was able to reach up and grab the device. Warner and McKee struggled briefly over the device before it fell to the ground. Shortly thereafter, McKee regained control of the TASER device and used it to subdue Warner. McKee suffered a broken finger as a result of the altercation with Warner that caused the officer to initially lose control of the device.

On cross-examination, defense counsel got Finchum to agree to a characterization of the events as either Warner merely resisting Finchum's attempts at arrest or Warner merely trying to run away. Finchum also admitted that he was not punched or elbowed by Warner when the officer tackled him.

Sergeant McKee testified next. He told the jury that he was working November 9, 2005, when he was met by Finchum near the intersection of Press Road and Hunter in Nacogdoches.

5

Finchum was talking to Warner when McKee arrived. While Finchum talked with Warner, McKee learned from Patterson that Warner would need to be arrested in conjunction with a domestic disturbance. McKee informed Finchum of this information, and the two officers then attempted to arrest Warner. According to McKee, Finchum informed Warner that he would be detained; McKee then grabbed Warner's left arm, Finchum grabbed Warner's right arm, and the two officers attempted to put Warner's hands behind his back and place him in handcuffs.

Warner, however, did not cooperate. "He twisted away and pulled away and took off running, kind of towards the park . . . ." Finchum eventually caught up with Warner, and the two were wrestling on the ground. When Warner continued to fight, claw, and struggle, McKee opted to use a TASER device to subdue Warner. McKee applied the device to Warner's chest, but Warner was able to break free from Finchum's hold; Warner then used both hands to grab the device by its front part "and twisted it, breaking it out of [McKee's] hand."[3] The TASER device then fell to ground.

McKee eventually regained control of the device and used it again on Warner's leg. In so doing, the officers were finally able to gain sufficient control of Warner to place him in handcuffs. However, McKee soon realized that one of the fingers on his right hand was broken. McKee agreed that the broken finger "hurt a lot." X-rays taken later at the hospital confirmed that McKee's finger had been broken in three places as a result of Warner twisting McKee's hand while the officer first

_____

[3]At trial, McKee agreed with the characterization of Warner's taking the TASER device as a voluntary act by Warner.

6

attempted to use his TASER device to subdue the suspect. As a result of the injuries he sustained, McKee was unable to work for eight weeks.

Warner then testified in his own defense. According to Warner's testimony, on November 9, 2005, he and his girlfriend went to his mother's house on Drewery Drive in Nacogdoches. Warner and his mother got into an argument, prompting Warner to get angry, kick down the screen door to the home, and walk away from the argument. As Warner continued down the road, Finchum and McKee ultimately encountered Warner, who tried to tell the officers his version of what had transpired back at his mother's house.

Ultimately, the officers informed Warner that they intended to detain him for further questioning. According to Warner's continued testimony, he then just "blacked out," but Warner admitted he resisted the officers' efforts at restraining him during this period of alleged blackout.

Warner also told the jury that he is autistic and receives federal assistance as a result of his disorder.[4] He admitted on cross-examination that he had been previously convicted of unauthorized use of a motor vehicle, aggravated assault, and retaliation; he also admitted being sentenced to seven years' imprisonment on the latter two charges. He further acknowledged that diagnostic testing, conducted in February or March of 2005, did not indicate Warner suffered from any form of autism.

_____

[4]Warner reported that he currently takes medication—including Depakote, Lexapro, and Risperdal. These medications are psychotropic drugs. *See Thompson v. Barnhart*, 493 F. Supp. 2d 1206, 1216 (S.D. Ala. 2007) (Lexapro); *Patel v. Williams ex rel. Estate of Mitchell*, 237 S.W.3d 901, 903 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (Risperdal); *Euler v. State*, 158 S.W.3d 75, 77 (Tex. App.—Houston [14th Dist.] 2005), *aff'd*, 218 S.W.3d 88 (Tex. Crim. App. 2007) (Depakote).

7

Finally, Warner testified that he never intended to break McKee's finger and that he never took away McKee's TASER device. He accused McKee and Finchum of concocting their stories to frame Warner in this case.

After reviewing all the evidence admitted at trial (including two DVD records made by the officers' in-car video recorders) under the applicable review standards, we conclude the evidence is legally and factually sufficient to support the trial court's judgment of conviction. The officers' testimonies and the State's medical documentation provides evidence establishing all the essential elements of assault on a public servant, as charged in the indictment in this case. And the State's evidence supporting conviction is neither greatly outweighed by contrary evidence nor so weak as to suggest the jury's verdict was manifestly unjust. We, therefore, overrule Warner's points of error attacking the sufficiency of the evidence.

*(2)      Resisting Arrest Is Not a Lesser-Included Offense to Assault on a Public Servant*

Warner contends the trial court erred by denying his request for a lesser-included-offense instruction on the offense of resisting arrest.

To constitute a lesser-included crime, an offense must (1) be established by proof of the same or less than all of the facts required to establish the commission of the offense charged; (2) differ from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish the crime's commission; (3) differ from the offense charged only in the respect that it requires a less culpable mental state to establish the crime's

8

commission; or (4) consist of an attempt to commit the offense charged or an otherwise included offense. TEX. CODE CRIM. PROC. ANN. art. 37.09 (Vernon 2006).

In reviewing a claim that the trial court erred by not submitting an instruction on a lesser-included offense, the reviewing court must first examine the elements of the primary offense as defined by the indictment in the case, *not* by reference to the evidence admitted at trial. *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007). The elements of that primary offense are then compared to those of the claimed lesser-included offense. If the latter is a lesser-included of the former, then we must review all of the evidence admitted at trial to determine whether there is any evidence—even a mere scintilla—that would support a jury's finding that the accused was guilty only of the lesser-included offense, if he or she was guilty at all. *Id.* at 535–36.

The elements of the offense of assault on a public servant, as charged in the indictment, are that a person (1) intentionally or knowingly, (2) causes bodily injury, (3) to a person, (4) whom the actor knows to be a public servant, and (5) that public servant is discharging an official duty. TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(1). "By contrast, the elements of the offense of resisting arrest are that a person (1) intentionally prevents or obstructs; (2) a person he knows is a peace officer; (3) from effecting an arrest of the actor; (4) by using force against the peace officer." *Dunklin v. State*, 194 S.W.3d 14, 22 (Tex. App.—Tyler 2006, no pet.) (citing TEX. PENAL CODE ANN. § 38.03(a) (Vernon 2003)). Assault on a public servant is a felony offense. TEX. PENAL CODE

9

ANN. § 22.01(b). Resisting arrest is typically a misdemeanor offense. TEX. PENAL CODE ANN. § 38.03(c) (Vernon 2003).

In this case, assault on a public servant (as charged in the indictment) required an element of proof—intentionally or knowingly causing bodily injury to McKee—that resisting arrest did not. Additionally, proof of resisting arrest required proof of an element that the assault charge would not—preventing or obstructing the peace officer from effecting an arrest. Because each of the two crimes contains an element of proof the other does not, resisting arrest would not have been a proper lesser-included offense of assaulting a public servant. *Cf. Ortega v. State*, 171 S.W.3d 895, 899–00 (Tex. Crim. App. 2005) (State not barred by double jeopardy from securing convictions for both resisting arrest and assault on public servant; resisting arrest is not lesser-included offense of assaulting public servant); *Dunklin*, 194 S.W.3d at 22 (trial court did not err by denying requested instruction on resisting arrest during trial on aggravated assault of public servant). It follows, then, that the trial court did not err by denying Warner's requested jury instruction on the lesser offense of resisting arrest.

Having concluded that legally and factually sufficient evidence supports the jury's verdict, and having concluded that resisting arrest is not a lesser-included offense of assaulting a public servant, we overrule each of Warner's points of error and affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     August 27, 2008
Date Decided:       October 10, 2008

Do Not Publish