

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-11-00409-CR

KENNETH CALVIN KNOX, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 18th District Court
Johnson County, Texas
Trial Court No. F45265, Honorable John E. Neill, Presiding

October 29, 2013

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant Kenneth Calvin Knox appeals from his jury conviction of the offenses of burglary of a habitation[1] and possession of a controlled substance in an amount of more than one gram but less than four grams[2] and the resulting sentences of fifteen years

---

[1] Tex. Penal Code Ann. § 30.02(c)(2) (West 2012).

[2] Tex. Health & Safety Code Ann. § 481.115(c) (West 2012).

and ten years respectively.  Through four issues, appellant contends the trial court reversibly erred.  We will affirm.

## Background

Appellant was charged via indictment with one count of burglary of a habitation and one count of possession of methamphetamine in an amount of one gram or more but less than four grams.  Appellant plead not guilty and the matter was tried before a jury.

Jarrett Wharton, a flight nurse with Air Evac Lifeteam, testified he returned to his home after work and went directly into the bathroom, leaving the home's back door shut but unlocked.  He heard a noise while he was in the bathroom.  When he emerged, he found a man later identified as appellant sitting on his couch.  Appellant was looking at his feet, next to which sat a pair of running shoes Wharton identified as a pair he left on his back porch. Wharton testified he asked appellant, "who are you and what are you doing in my house?"  Appellant replied with an assertion he was allowed to be in the house.  Wharton told him he was not allowed and told him to leave.

Appellant tried to leave through the back door.  Wharton testified he recalled his neighbor's home had been burglarized eight months earlier and decided to detain appellant until police arrived.  He blocked the back door and pushed appellant away when he approached.  Appellant reached toward his "right side."  Wharton opened the back door and stepped aside.  Appellant ran out the door.  Wharton went to his truck to get his pistol.  Appellant ran across the street and between two houses but a fence blocked his path so he turned back toward Wharton.  Wharton fired a shot in the air,

leading appellant to stop and get on the ground. Wharton saw a knife in an unsnapped case at appellant's right side. Wharton took the knife and tossed it aside.

While they waited for police, Wharton said appellant became "very agitated and got up." He was "becoming belligerent." Wharton said he did not recall everything appellant said but "it didn't make a lot of sense." He also testified appellant approached him "in kind of a threatening manner." After police arrived, appellant told the responding officer, Officer Riddell, he thought he was at his "homeboy's" house. The officer testified appellant told him he was "tweaking on methamphetamines" and had been "partying" for five or six days.

Appellant testified to his version of the events. He told the jury he had eaten a salad earlier in the evening not knowing it contained shrimp. He said he has a severe allergy to shellfish, including shrimp. Shortly after consuming the salad, he began to feel ill and developed a migraine headache. He described further symptoms including feeling "tingly," numb and confused.

Dana James testified as a witness for appellant. She confirmed she served him a salad containing shrimp, unaware of his shellfish allergy. She testified that after she and appellant ate the salad, they "talked a little bit" and she went to bed. Appellant left and James did not see him again.

Appellant testified further he left James's home on foot, intending to reach the home of a friend where he was staying "off and on." The home was usually unlocked, and he had entered through its back door many times. He said he walked into Wharton's home believing it to be his friend's residence, telling the jury he was suffering

3

memory loss or a "blackout" at the time. He acknowledged picking up a pair of shoes from Wharton's back porch and carrying them into the living room. While appellant admitted he had marijuana on his person, he denied he was using any drugs at the time and denied telling Riddell he was "tweaking" on methamphetamine.

As another officer, Vanderlaan, investigated the scene, a neighbor, White, approached him to show him a blue-green plastic baggie he found in his yard beside the driveway. White testified he knew the baggie had been dropped recently because he had done yard work the previous day, "picked up the trash over there" and the baggie was not present then. The bag was later determined to contain methamphetamine. No fingerprints were found on the baggie.

Analysis

Appellant's four issues challenge the sufficiency of the evidence to support his two convictions.

We review a sufficiency of the evidence issue, regardless whether it is denominated as a legal or a factual insufficiency claim,[3] under the standard of review set forth in *Jackson v. Virginia.*[4] *Brooks v. State,* 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Polk v. State*, 337 S.W.3d 286, 288-89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any

---

[3] Appellant discusses the evidence under both legal and factual insufficiency standards.

[4] *Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

4

reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Under this standard, we defer to "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 894, 899, 916. Considering all the evidence in the light most favorable to the verdict, we determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899. Sufficiency of the evidence is to be measured by the elements of the offense as defined by the hypothetically-correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically-correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id*.

Burglary of a Habitation

To establish guilt of burglary of a habitation under Penal Code § 30.02(a)(1), the State must prove the defendant entered the habitation, without the effective consent of the owner, with the intent to commit a felony, theft or assault at the time he entered. Tex. Penal Code Ann. § 30.02(a)(1) (West 2012); *Espinoza v. State,* 955 S.W.2d 108, 111 (Tex. App.—Waco 1997, pet. ref'd). Under § 30.02(a)(1), the State is not required to prove the defendant actually completed a theft. *See Richardson v. State*, 888 S.W.2d 822, 824 (Tex. Crim. App. 1994) (harm from burglary results from entry itself,

5

and offense is complete once unlawful entry is made regardless whether intended theft is also completed). Appellant's argument focuses on the intent element, contending the record contains insufficient evidence he possessed the intent to commit theft when he entered the Wharton home. Proof of intent may be established by circumstantial evidence. *Mauldin v. State,* 628 S.W.2d 793, 795 (Tex. Crim. App. 1982) (panel op.); *Moore v. State*, 54 S.W.3d 529, 539 (Tex. App.—Fort Worth 2001, pet. ref'd).

Appellant argues the evidence gives rise to no reasonable inference he intended to take Wharton's running shoes because, appellant notes, he had not removed his shoes from his feet when Wharton discovered his presence. We find the argument unpersuasive. The argument depends largely on acceptance of appellant's testimony he believed himself to be in his friend's house. The jury was not required to accept appellant's explanation of his presence in Wharton's home. The State adduced evidence that appellant's friend's house was located some twelve blocks from Dana James's home, while Wharton's house was three blocks from James's.

A medical doctor, an allergist, testified for the defense. He stated many of the symptoms appellant described, including an itchy throat, tight lips and migraine headache, were consistent with an allergic reaction. On cross-examination, the allergist said confusion or "walking blackouts," however, were not common symptoms. He also testified that allergic reactions of this nature generally diminish after fifteen to twenty minutes. Appellant was found in Wharton's home nearly four hours after James testified he ate the shrimp in the salad.

The jury might have inferred appellant innocently picked up the shoes as he entered Wharton's home. But the jury also rationally could have inferred appellant

6

picked them up as he entered the residence because he intended to take them, and further inferred from the circumstances that appellant intended theft when he entered the residence, armed with a knife, without Wharton's consent. *See Young v. State*, No. 05-05-01607-CR, 2006 Tex.App. LEXIS 8090, (September 13, 2006, no pet.) (mem. op., not designated for publication) ("Sufficient evidence of intent to commit theft has been found in cases with limited disturbance of items inside the burglarized residence") (citations omitted).

Looking at the evidence in the light most favorable to the verdict, and the reasonable inferences to be drawn from the evidence, a rational trier of fact could have found the essential elements of burglary of a habitation beyond a reasonable doubt. *Hooper v, State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *King v. State,* 895 S.W.2d 701, 703 (Tex. Crim. App. 1995) (en banc).

Possession of Methamphetamine

Appellant also challenges the sufficiency of the evidence supporting his conviction for possession of methamphetamine in an amount more than one gram but less than four grams.

To meet its burden of proof appellant knowingly possessed a controlled substance, the State was required to demonstrate appellant (1) exercised control, management, or care over the substance and (2) knew the matter possessed was contraband. *See Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); *see also* Tex. Health & Safety Code Ann. § 481.115(c) (West 2012). "Possession" means actual care, custody, control or management of an item. Tex. Health & Safety Code

Ann. § 481.002(38) (West 2012). Regardless whether the evidence is direct or circumstantial, it must establish that appellant's connection with the drug was more than fortuitous. *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006).

When the contraband is not found on the accused's person or is not in his exclusive possession, additional facts must link the accused to the contraband. *Willis v. State*, 192 S.W.3d 585, 593 (Tex. App.—Tyler 2006, no pet.). Among the nonexclusive factors that may be considered when evaluating links are (1) whether the contraband was in plain view or recovered from an enclosed place; (2) whether the accused was the owner of the premises or had the right to possess the place where the contraband was found, or was the owner or driver of the automobile in which the contraband was found; (3) whether the accused was found with a large amount of cash; (4) whether the contraband was conveniently accessible to the accused or found on the same side of the vehicle as the accused was sitting; (5) whether the contraband was found in close proximity to the accused; (6) whether a strong residual odor of the contraband was present; (7) whether the accused possessed other contraband when arrested; (8) whether paraphernalia to use the contraband was in view or found on the accused; (9) whether the physical condition of the accused indicated recent consumption of the contraband in question; (10) whether conduct by the accused indicated a consciousness of guilt; (11) whether the accused attempted to escape or flee; (12) whether the accused made furtive gestures; (13) whether the accused has a special connection to the contraband; (14) whether the occupants of the premises gave conflicting statements about relevant matters; (15) whether the accused made incriminating statements connecting himself to the contraband; (16) the quantity of the

contraband; and (17) whether the accused was observed in a suspicious place under suspicious circumstances. *Id.*

Each case must be examined on its own facts. *Roberson v. State*, 80 S.W.3d 730, 736 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). A link ordinarily emerges from a combination of factors and the force of logic they have in combination. *See Young v. State*, 242 S.W.3d 192, 197 (Tex. App.—Tyler 2007, no pet.).

As noted, appellant admitted to the jury he had been addicted to methamphetamine and had been released five weeks before this incident from a sentence resulting from possession of methamphetamine. Appellant also had a previous conviction for possession of marijuana. Marijuana and rolling papers were found on his person when he was arrested.

Appellant further acknowledges that the location at which the baggie containing methamphetamine was found was along the path he ran as he attempted to flee Wharton's home. The neighbor testified at trial, telling the jury the baggie was not in his yard the evening before when he worked in his yard. He also told the jury the neighborhood was not one in which this type of contraband was generally found. Officer Vanderlaan testified the baggie did not look like it had been in the yard "very long." From all the circumstances it heard described, we find the jury rationally could have inferred the methamphetamine's location along the path appellant took while being pursued by Wharton was more than fortuitous.

Police officers and Wharton, a registered nurse, testified appellant's behavior was consistent with that of someone under the influence of methamphetamine. He was

agitated, aggressive, talkative and moved his mouth in an unusual manner. As noted, despite appellant's denial, the jury was free to accept the responding officer's testimony indicating appellant made comments suggesting recent use of methamphetamine. This testimony, considered in light of the allergist's testimony, could have led the jury to a rational conclusion appellant was under the influence of methamphetamine rather than an allergic reaction to shrimp. Under these circumstances, evidence showing recent consumption of methamphetamine is a compelling link between appellant and the baggie containing methamphetamine.

Based on our examination of the evidence in the light most favorable to the jury's verdict and in light of the nonexclusive factors listed herein, we conclude the jury could have reasonably determined beyond a reasonable doubt that appellant was the source of the baggie containing methamphetamine found near Wharton's neighbor's driveway, and that appellant knowingly and intentionally possessed the methamphetamine found in it. The evidence is sufficient to support appellant's conviction of possession of a controlled substance. We overrule appellant's remaining issues.

Having resolved appellant's issues against him, we affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.