In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00078-CR


______________________________




JULIO CESAR PADILLA, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 159th Judicial District Court


Angelina County, Texas


Trial Court No. 27,082




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Moseley



O P I N I O N



 A jury found Julio Cesar Padilla ("appellant") guilty of two counts of aggravated sexual
assault of a child. The jury assessed the appellant's punishment at twelve years' imprisonment for
the first count and thirteen years' imprisonment for the second count. The trial court ordered that the
appellant's thirteen-year sentence not commence until he had first completed the twelve-year
sentence. See Tex. Code Crim. Proc. Ann. art. 42.08(a) (Vernon 2006). The appellant now
challenges his conviction, raising five points of error. (1) We overrule each issue and affirm the trial
court's judgment.

I. The Trial Court Erred by Allowing an Amendment to the Indictment After Voir Dire

 In his first issue, the appellant contends that the trial court erred by permitting the State to
amend the grand jury's indictment on the day of trial, between the time that voir dire had been
completed and the jury empaneled but before either party made opening statements. 

 It is clear from the State's motion that the amendment to the indictment was not a simple
correction of grammar; rather, the proposed amendment was to supplement the core of the
indictment so as to include two missing elements of the crime for which the appellant was going to
trial. Although this represented something of a fundamental change in the indictment, the State
maintained that the amendment created no surprise to the appellant. The appellant admitted that the
proposed amendment caused no undue surprise to him, he made no request for a continuance to
allow for additional time to prepare for the charges as they would stand after amendment of the
indictment, and he does not now claim on appeal that the last-minute amendment of the indictment
occasioned any surprise to him or that he was prejudiced by the amendment. 

 On appeal, the State prudently concedes that the trial court erred by permitting the
amendment over the appellant's objection. The court's authorization of the amendment to the
indictment's primary charge over the objection of the appellant after the jury had been sworn and
empaneled was clearly erroneous. See Tex. Code Crim. Proc. Ann. art. 28.10 (Vernon 2006). 
However, although the State concedes the error, it contends that this error was harmless since the
appellant admitted at trial that the amendment was neither a surprise, nor was it an action that
precipitated a need for him to be granted additional time to prepare for trial. 

 "Except for certain federal constitutional errors labeled by the United States Supreme Court
as 'structural,' no error, whether it relates to jurisdiction, voluntariness of a plea, or any other
mandatory requirement, is categorically immune to a harmless error analysis." Cain v. State, 947
S.W.2d 262, 264 (Tex. Crim. App. 1997) (footnote omitted). (2) The error in this case involves a
statutory violation, not a constitutional one. Our procedural appellate rules require us to disregard
any nonconstitutional error, defect, irregularity, or variance that does not affect the accused's
substantial rights. Tex. R. App. P. 44.2(b). A "substantial right" is affected "when the error had a
substantial and injurious effect or influence in determining the jury's verdict." King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997). If, on the record as a whole, it appears the error "did not
influence the jury, or had but a slight effect," we shall consider the error harmless and allow the
conviction to stand. Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

 The appellant's brief does not suggest any harm arose from the action of the trial court. Even
had the appellant made an attempt to present an argument regarding harm which might have resulted
from this error, we would not find ourselves persuaded that the trial court's error impacted the
appellant's substantial rights.

 When trying to determine whether a trial court's error affected a substantial right, we must
examine the possible outcomes had the indictment not been amended erroneously. This examination
considers two questions:

 whether the indictment, as written, informed the defendant of the charge against him
sufficiently to allow him to prepare an adequate defense at trial, and whether
prosecution under the deficiently drafted indictment would subject the defendant to
the risk of being prosecuted later for the same crime. 


Gollihar v. State, 46 S.W.3d 243, 248 (Tex. Crim. App. 2001) (quoting United States v. Sprick, 233
F.3d 845, 853 (5th Cir. 2000)).

 The record shows both the State and the appellant fully questioned the prospective jurors
during voir dire about the applicable punishment range for aggravated sexual assault of a child, the
offense with which the appellant was charged (after the amendment of the indictment) and ultimately
convicted. See Tex. Penal Code Ann. § 12.32 (Vernon 2003) (punishment range for first-degree
felony is five to ninety-nine years, or life), § 22.021(e) (Vernon Supp. 2008) (aggravated sexual
assault of child is first-degree felony). Both sides discussed with the prospective jurors the various
elements of the crime charged as it ultimately appeared in the amended indictment, as well as the
appropriate burden of proof. Both sides also discussed with the prospective jurors various
evidentiary and credibility issues that arise during trials of persons accused of aggravated sexual
assault of a child. The appellant admitted at trial that the State's proposed amendments did not cause
him any surprise and that he was prepared to continue with the trial. The original indictment also
included references to "Aggravated Sexual Assault" and Section 22.021 of the Texas Penal Code in
the heading of that document. We conclude, therefore, that the evidentiary record regarding the first
element of the Sprick test does not support the conclusion that the trial court's error impacted the
appellant's substantial rights because the record shows the appellant was able to prepare for trial on
the accusations ultimately submitted to the jury.

 We also conclude the record regarding the second element of the Sprick test supports the
conclusion that the trial court's error will not subject the appellant to being prosecuted later for these
same crimes. Aggravated sexual assault "is a conduct-oriented offense in which the legislature
criminalized very specific conduct of several different types." Vick v. State, 991 S.W.2d 830, 832
(Tex. Crim. App. 1999) (cited for continued approval in Huffman v. State, 26 S.W.3d 902 (Tex.
Crim. App. 2008)); and cf. Mathonican v. State, 194 S.W.3d 59, 64-65 (Tex. App.--Texarkana
2006, no pet.) (concluding sexual assault statute creates conduct-oriented offense). Thus, inasmuch
as a jury convicted the appellant of engaging in a specific course of conduct, with a specific victim,
on or about the specific date in question, he may not be again subjected to a second trial and
punishment for that same conduct. See U.S. Const. amend. V; Tex. Const. art. I, § 14. The record
before us conclusively forecloses a finding under Sprick that the trial court's error in permitting the
State to amend the indictment over the appellant's objection harmed the appellant's substantial rights. 

II. Sufficient Evidence Supports the Jury's Guilty Verdict

 In his second point of error, the appellant contends the evidence is legally insufficient to
support his conviction because he maintains that (1) there is no DNA (deoxyribonucleic acid)
evidence linking him to the sexual assaults, (2) the sexual assault nurse examiner (SANE) testified
that the appellant could not have perpetrated the crime, (3) the appellant had not had "access" to the
child victim during the immediately-preceding three weeks before the assault allegedly occurred, 
and (4) there is a possibility that someone other than the appellant (including the victim's own
brother) committed the crime. 

 We first note that the appellant was found guilty of two different counts of aggravated sexual
assault. The appellant has made no effort to identify which of these counts he believes is not
supported by sufficient evidence of guilt, and it is not possible to glean from his discussion of the
evidence whether this complaint applies to one charge, to the other charge, or to both charges. In
the interest of justice, we assume that his challenge concerns both convictions and discuss the
evidence supporting each. 

 "The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt." Young v. State,
242 S.W.3d 192, 197 (Tex. App.--Tyler 2007, no pet.) (referencing Jackson v. Virginia, 443 U.S.
307, 320 (1979); Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)). In examining
evidentiary sufficiency, we examine the evidence in the light most favorable to the verdict. Jackson,
443 U.S. at 320; Johnson, 871 S.W.2d at 186. "A successful legal sufficiency challenge will result
in rendition of an acquittal by the reviewing court." Young, 242 S.W.3d at 197 (referencing Tibbs
v. Florida, 457 U.S. 31, 41-42 (1982)). Evidentiary sufficiency is measured "by the elements of the
offense as defined by the hypothetically correct jury charge for the case." Malik v. State, 953 S.W.2d
234, 239-40 (Tex. Crim. App. 1997). (3)

 For the first count of aggravated sexual assault in this case, the hypothetically-correct jury
charge would require proof that the appellant intentionally or knowingly caused the penetration of
the sexual organ of Jane Doe (a pseudonym), a child who was then younger than fourteen years of
age and not the appellant's spouse, by inserting his finger. See Tex. Penal Code Ann. § 22.021
(Vernon Supp. 2008). The hypothetically-correct jury charge for the second count would require
proof that the appellant intentionally or knowingly caused the penetration of the anus of Jane Doe,
a child who was then younger than fourteen years of age and not the appellant's spouse, by using the
appellant's sexual organ. See Tex. Penal Code Ann. § 22.021. (4) 

 Janie Lee, a SANE, testified that she examined the victim, Jane Doe, on December 20, 2006. 
The victim was eight years old at the time. The victim told Lee at the time of the examination that
"My dad's friend put his important part in my bottom." The victim identified this assailant as "Julio." 
The victim later explained that this "important part" was Julio's penis and her "bottom" was her anus. 
The victim also told Lee that Julio had stuck his finger into her vagina and that he used his finger
to penetrate her vagina about three weeks before the sexual assault examination. While Lee said that
she observed no tearing or scarring around the victim's sexual organ, she also said this absence of
evidence of physical damage was not uncommon; Lee testified it is possible to sexually assault
someone without tearing the hymen. Thus, the absence of scarring did not medically disprove the
victim's claim of being molested.

 During the examination of the victim's anal area, Lee noticed bruising on the outer side of
the victim's buttocks. She also noticed "rapid dilation of the anus," which suggested the victim had
been conditioned to having her anus penetrated. Lee also observed "an old scar" in the anus, which
could not have been caused by the child passing a stool. These injuries were consistent with repeated
sexual abuse over a period of time. 

 On cross-examination, Lee testified that the victim had said that the appellant had not had
contact with the victim for three weeks prior to the examination. Lee also suggested that some of
the more immediate redness and swelling around the victim's vagina could not have been caused by
the appellant if the appellant had not had any contact with the victim during the three weeks that
preceded Lee's examination of the victim. However, Lee also told the jury that the bruising around
the victim's anus could potentially be consistent with a sexual assault that occurred three weeks
earlier due to "the vascularity of the rectum." 

 The victim in this case testified; she was nine years old at the time of trial. She identified the
appellant as being her father's friend. She also testified that the appellant had touched her vagina and
her anus with his finger and his penis, that the touching hurt her, and that the touching had happened
more than once. The victim denied that her older brother had done these things to her and said that
the only person who had molested her was the appellant. 

 On cross-examination, the victim said the appellant had put his finger inside her vagina. She
also admitted that her parents had discovered that her sixteen-year-old brother had possessed
pornographic videos, but had thrown them away. She denied having watched these videos with her
brother. 

 Angelica Barrera was the State's outcry witness. See Tex. Code Crim. Proc. Ann. art.
38.072 (Vernon 2005). Barrera testified that the victim said the appellant had put his penis in her
anus. The victim reportedly also told Barrera that the appellant had touched the victim's vagina with
his finger. 

 While there was no DNA evidence brought forth to link appellant to the alleged crimes, we
do not believe this absence is adequate to cloud the legal sufficiency of the jury's verdict. Although
some of Lee's testimony could be read to suggest that she did not believe the appellant had inserted
his finger in the victim's vagina within the seventy-two-hour period preceding the sexual assault
examination, Lee also testified that her examination of the child revealed old scars which suggested
that molestation had occurred possibly three weeks before the examination date (a point in time
when the appellant had been granted access to the child and could have committed the alleged
crimes). Finally, while there was evidence that suggested the victim's sixteen-year-old brother (or
perhaps any of his friends) had been inside the victim's house during the relevant time period, had
a penchant for pornography, and had the possible opportunity to molest the victim, we do not believe
such simple speculation casts a sufficient cloud of doubt on the veracity of the other evidence
supporting the jury's verdict. Accordingly, we conclude the evidence is legally sufficient to support
the appellant's conviction on both counts of aggravated sexual assault of a child.

III. The Trial Court Did Not Abuse Its Discretion by Allowing Leading Questions

 In his third point of error, the appellant contends the trial court erred by permitting the State
to ask leading questions during its direct examination of the nine-year-old victim. The appellant asks
us to exclude the victim's testimony that resulted from any leading questions propounded by the State
to the victim. 

 We review a trial court's decision to permit leading questions of a party's own witness for
abuse of discretion. Newsome v. State, 829 S.W.2d 260, 269-70 (Tex. App.--Dallas 1992, no pet.). 
"A trial court abuses its discretion if its ruling is not based on reasonable interpretations of the law
and is outside the zone of reasonable disagreement." Arroyo v. State, 259 S.W.3d 831, 836 (Tex.
App.--Tyler 2008, pet. ref'd) (citing Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App.
1991) (op. on reh'g)). "Leading questions should not be used on the direct examination of a witness
except as may be necessary to develop the testimony of the witness." Tex. R. Evid. 611(c). Our
evidentiary rules also bestow the trial court with wide latitude in controlling the manner and mode
of interrogating witnesses "so as to (1) make the interrogation and presentation effective for the
ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from
harassment or undue embarrassment." Tex. R. Evid. 611(a). "In cases dealing with child witnesses,
the rule against leading questions is somewhat relaxed." Clark v. State, 952 S.W.2d 882, 886 (Tex.
App.--Beaumont 1997, no pet.) (citing Moon v. State, 856 S.W.2d 276, 279 (Tex. App.--Fort
Worth 1993, pet. ref'd)).

 In Clark, the Ninth Court of Appeals reviewed a situation in which the defendant was
convicted of child sexual assault and the victim was "young" and obviously very troubled. 952
S.W.2d at 886. The Clark court also noted that the victim was cross-examined extensively and much
the same testimony was elicited. Id. 

 The reporter's record shows the victim in this case had to be reminded more than once to
speak louder, that she appeared to be very reluctant to testify about these events in front of a
courtroom full of people, that she was having trouble remembering the events that had occurred over
a year before trial, and that she was eventually overcome with emotion during direct examination. 
The record also shows the appellant was able to cross-examine her and much the same testimony was
elicited again during that cross-examination. Cf. Clark, 952 S.W.2d at 886; Trevino v. State, 783
S.W.2d 731, 733 (Tex. App.--San Antonio 1989, no pet.). The record does not suggest that the
State's leading questions supplied this young girl with a false memory. Accord Newsome, 829
S.W.2d at 270.

 Given the state of this record, we cannot say the trial court abused its discretion or acted
outside the zone of reasonable disagreement by permitting the State to ask leading questions during
the direct examination of this young girl.

IV. The Trial Court Did Not Err By Permitting Barrera To Testify As an Outcry Witness


 In his fourth point of error, the appellant contends the trial court erred by allowing Barrera
to testify regarding the hearsay statements of the victim without the State first having given the
appellant the requisite pretrial notice. 

 Texas law excepts the testimony about the outcry made by a child less than thirteen years old
regarding sexual abuse from the hearsay rule when such testimony is proffered by the first person
over age eighteen to whom the victim made such an outcry. Tex. Code Crim. Proc. Ann. art.
38.072. However, as a predicate to that exception, the State must provide advance notice of its intent
to offer such testimony at trial, this notice including a summary of the anticipated testimony. Id. 

 The record shows the State failed to provide the appellant with an advance written notice and
summary of Barrera's expected outcry testimony. Although the appellant made a proper objection
to Barrera's hearsay testimony about the victim's outcry of sexual abuse on the basis of the State's
failure to provide prior written notice, the trial court nonetheless permitted Barrera to give such
hearsay testimony. 

 We may not reverse a trial court's judgment based on the erroneous admission of outcry
testimony unless the appellate record shows the requisite level of harm emanating from the trial
court's error. Zarco v. State, 210 S.W.3d 816, 832 (Tex. App.--Houston [14th Dist.] 2006, no pet.). 

 Here, although the appellant does point out the trial court's error, he makes no attempt to
identify any harm which resulted to him as a result of that error (i.e., the admission of Barrera's
hearsay testimony about the victim's outcry). Even if that had been attempted, identification of any
resulting harm would have been difficult because the jury had already heard much of this same
information from the victim herself and--for the most part--the outcry testimony was a reiteration
of evidence already otherwise properly admitted. The jury might very well have decided to convict
the appellant based on the victim's testimony alone, without consideration of any of Barrera's
testimony--which means the appellant might have suffered no harm as a result of the admission of
this outcry testimony. As the appellant has made no attempt to argue or demonstrate that the jury's
assessment of the victim's credibility shifted from unfavorable to favorable merely as a result of
Barrera's testimony regarding the young girl's outcry, we will not make the appellant's argument for
him. See Wyatt v. State, 23 S.W.3d 18, 23 n.5 (Tex. Crim. App. 2000); see also Tex. R. App. P.
38.1(h). In addition, we note that although the appellant brought to the attention of the trial court
that no prior written notice of the anticipated outcry testimony had been provided, he also admitted
at trial that Barrera's testimony regarding the child's outcry was no surprise to him. Thus, even had
the appellant's brief attempted to point out any resulting harm, it is quite unlikely that we would be
persuaded that the record supports the conclusion that the outcome of the trial would have been
different without Barrera's testimony.

V. The Trial Court Properly Denied the Appellant's Requested Lesser Offense Instruction

 In his final point of error, the appellant contends that the trial court erred by not instructing
the jury on a lesser-included offense of indecency with a child by contact under the first count of the
indictment. The victim in this case testified at one point that the appellant's finger did not go
"inside" her "important part," but that the appellant had merely touched her "important part." The
appellant contended at trial, as he does now on appeal, that this testimony satisfied the Rousseau (5)
test for obtaining a lesser-included offense charge; the trial court denied the requested instruction. 

 In order for there to be a lesser-included offense, "[T]he defendant must be guilty of the lesser
offense, but not of the greater." Dunklin v. State, 194 S.W.3d 14, 21 (Tex. App.--Tyler 2006, no
pet.) (citing Pickens v. State, 165 S.W.3d 675, 679 (Tex. Crim. App. 2005)).

 Our law states that one statutory offense may be considered a lesser-included offense of
another crime if:

 (1) it is established by proof of the same or less than all the facts required to
establish the commission of the offense charged; 


 (2) it differs from the offense charged only in the respect that a less serious
injury or risk of injury to the same person, property, or public interest suffices to
establish its commission; 


 (3) it differs from the offense charged only in the respect that a less culpable
mental state suffices to establish its commission; or 


 (4) it consists of an attempt to commit the offense charged or an otherwise
included offense. 


Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 2006); see also Dunklin, 194 S.W.3d at 20-21. 

 However, in determining whether a lesser-included offense exists, Texas courts are to
conduct what is known as the cognate-pleadings analysis "in which the court looks to the facts and
elements as alleged in the charging instrument, and not just to the statutory elements of the offense,
to determine whether there exists a lesser-included offense of the greater charged offense." Hall v.
State, 225 S.W.3d 524, 526 (Tex. Crim. App. 2007) (emphasis added). Under the cognate-pleadings
test, a court compares the statutory elements of the greater offense, as modified by the particular
allegations in the indictment, with the statutory elements of the lesser offense. Miles v. State, 259
S.W.3d 240, 246 (Tex. App.--Texarkana, 2008, pet. filed).

 The crime of aggravated sexual assault (as charged in the amended indictment's first count
in this case) required proof that the appellant intentionally or knowingly caused the penetration of
the victim's sexual organ by using his finger. See Tex. Penal Code Ann. § 22.021(a)(1)(B)(i),
(a)(2)(B). The "touching" part of the crime of indecency with a child requires proof that the accused
engaged in sexual contact with a child under the age of seventeen who was not the accused's spouse. (6) 
Tex. Penal Code Ann. § 21.11(a)(2); Henson v. State, 173 S.W.3d 92, 101 (Tex. App.--Tyler
2005, no pet.). "Sexual contact" is statutorily defined in this section to mean the touching of certain
body parts of the children described above, "if committed with the intent to arouse or gratify the
sexual desire of any person." Tex. Penal Code Ann. § 21.11(c) (Vernon 2003).

 The State maintains that the mens rea of the two offenses is not identical. In the indecency
statute, it must be shown that the person acted with the "intent to arouse or gratify the sexual desire
of any person," but the sexual assault statute requires only the intention to "knowingly and
intentionally" commit the proscribed actions. Compare Tex. Penal Code Ann. § 21.11 (Vernon
2003), with Tex. Penal Code Ann. § 22.021. Although it is not argued by the appellant, but using
the rationale employed by him, one could also take the position that if a defendant first disrobed a
child (thus exposing the child's genitalia) before inserting a finger into the child's vagina, the
exposure of the child in that fashion could fit into the definition of indecency with a child and was,
therefore, a lesser-included offense of sexual assault. 

 Although one might infer from the evidence that the appellant would not have had his hand
or fingers anywhere near the vagina of the victim unless he possessed the intent to arouse or gratify
sexual desire, under the cognate-pleadings test adopted in Texas, the evidence at trial is not the test
for a lesser-included offense; rather, the test lies in the pleadings (in this case, the indictment as
amended). The Legislature has opted to classify indecency with a child as a sexual offense and
sexual assault as an assaultive one. Compare Tex. Penal Code Ann. § 21.11 (classifying indecency
with a child among the sexual offenses against the person), with § 22.021 (classifying aggravated
sexual assault among the assaultive offenses against the person). Under the cognate-pleadings test
we are obligated to follow, unless an indictment in a sexual assault matter were to allege that the
indicted person acted with the intention to arouse or gratify sexual desire of some person, indecency
with a child would not be a lesser-included offense of sexual assault. Dudley v. State, No. 05-07-01083-CR, 2008 Tex. App. LEXIS 8463 (Tex. App.--Dallas Nov. 12, 2008, no pet. h.). This
indictment contains no such pleading or assertion.

 Accordingly, the trial court did not err by denying the appellant's request for a lesser-included
offense instruction on indecency with a child.

VI. Conclusion

 The record shows that the defendant suffered no surprise or harm as a result of the trial court
erroneously permitting the State to amend the indictment over the appellant's objection after the jury
had been sworn; accordingly, there was no error in that regard. The trial court did not abuse its
discretion by permitting the State to pose leading questions to the nine-year-old victim during its
direct examination. Although it was error to have allowed the testimony of the outcry witness
without the State's compliance with the prior notice required by Article 38.072 of the Texas Code
of Criminal Procedure, no harm has been shown for that error. The offense as pled by the State
would support only a charge of sexual assault and could not include indecency with a child as a
lesser-included offense; therefore, it was not error to deny the defense's request for such a jury
instruction. Finally, we conclude that the evidence is legally sufficient to support the appellant's
convictions under both counts of aggravated sexual assault.

 There being no other issues raised, we affirm the trial court's judgment.




 Bailey C. Moseley

 Justice


Date Submitted: December 8, 2008

Date Decided: February 5, 2009


Publish
1. Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court
by the Texas Supreme Court pursuant to its docket equalization efforts. See Tex. Gov't Code Ann.
§ 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court
of Appeals and that of this Court on any relevant issue. See Tex. R. App. P. 41.3.
2. The Texas Court of Criminal Appeals stated in Sodipo v. State, 815 S.W.2d 551 (Tex. Crim.
App. 1990) (op. on reh'g), that a trial court's error under Article 28.10 is not subject to harm analysis
and requires automatic reversal. In Flores v. State, 139 S.W.3d 61 (Tex. App.--Texarkana 2004,
pet. ref'd), we noted that while Sodipo has not been formally overruled by this state's highest criminal
court, that court's subsequent jurisprudence suggests Sodipo is, in fact, no longer sound. See Cain,
947 S.W.2d at 264. The parties have not directed us to any citations from either the Texas Court of
Criminal Appeals or the Twelfth Court of Appeals to suggest our reasoning in Flores was incorrect
regarding the applicability of harm analysis to an Article 28.10 error. See Tex. R. App. P. 41.3 (in
transfer cases, transferee appellate court must decide case in accordance with precedent of transfer
court under principles of stare decisis if transferee court's decision otherwise would be inconsistent
with precedent of transferor court). Nor has our independent research brought forth any suggestion
that Flores was incorrect. In fact, other appellate courts have since agreed with our conclusion that
an Article 28.10 error requires harm analysis despite Sodipo. See, e.g., Trejos v. State, 243 S.W.3d
30, 41-42 (Tex. App.--Houston [1st Dist.] 2007, pet. ref'd); Dukes v. State, 239 S.W.3d 444,
446-48 (Tex. App.--Dallas 2007, pet. ref'd); see also Curry v. State, 1 S.W.3d 175, 178-80 (Tex.
App.--El Paso 1999) (conducting harm analysis without addressing applicability of Sodipo's
automatic reversal doctrine to Article 28.10 error), aff'd, 30 S.W.3d 394 (Tex. Crim. App. 2000) (but
court did not address issue of Sodipo's continuing applicability, as review of that issue was not
granted). Given this trend, and given the fact that the Texas Court of Criminal Appeals has been
presented with several opportunities to address this issue in recent years, we continue to believe
Sodipo has been overruled sub silentio. 
3. The hypothetically-correct jury charge "sets out the law, is authorized by the indictment,
does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's
theories of liability, and adequately describes the particular offense for which the defendant was
tried." Malik, 953 S.W.3d at 240.
4. Because aggravated sexual assault is a conduct-oriented offense, the manner and means
would necessarily constitute an element of the hypothetically-correct jury charge for both charged
counts. Cf. Huffman, 267 S.W.3d at 906 (discussing why nature-of-conduct crimes require jury
unanimity on manner and means); and contrast Landarian v. State, 268 S.W.3d 532 (Tex. Crim.
App. 2008) (manner and means for result-oriented offenses not considered elements to be
incorporated into hypothetically-correct jury charge).
5. Rousseau v. State, 855 S.W.2d 666 (Tex. Crim. App. 1993).
6. Indecency with a child can likewise be committed by exposing one's genitals or anus to a
child or causing the child to expose his or her genitals or anus if the intention is to arouse or gratify
the sexual desire of a person. Tex. Penal Code Ann. § 21.11(a)(2) (Vernon 2003).



p>

                                                         
                                         

 

 

                                       On Appeal from the 201st
Judicial District Court

                                                             Travis County, Texas

                                                 Trial Court No. D-1-GN-10-002580

 

                                                                                                  


 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                      MEMORANDUM OPINION

 

            A residential lot containing a
home with the street address of 917 Jewell, Austin, Texas 78704[1]
(the property) was purchased by Felipe and Marcos Gonzales in 1970.  Marcos died in 1987 and Felipe died intestate
in 2008.  They had six living children at
the time of Felipes death including Clemente, Silbiano, Candelario, Jose,
Juan, and Francisco.  Clemente claims
that his parents purchased the property for him and transferred the property
orally.  In support, Clemente swore that
his parents never lived on the property, that he moved onto the property in
1970, lived there continuously, paid the mortgage, and paid all property
taxes.     

            In June
2010, Silbiano and Jose filed applications for letters of administration in
Travis County probate court, along with an application to determine heirship.  By virtue of the determination of heirship,
awarding each living child a 1/6 interest in Felipes estate, Silbiano and Jose
began to assert an interest in the property. 
The other children executed a quitclaim deed to the property in favor of
Clemente. 

            In July
2010, Clemente filed a declaratory judgment action seeking to quiet title to
property against Silbiano; Jose; the Estate of Felipe Gonzales by and through
Silbiano, the Estate Representative; and the Estate of Marcos Gonzales by and
through Silbiano, the Estate Representative.[2]  Clemente asserted title by gift, parol sale,
adverse possession, and by circumstantial evidence.  Silbiano and Jose generally denied the
allegations in Clementes petition. 

            Clemente
filed a motion for partial summary judgment on the claims of parol sale of land
and adverse possession against all defendants. 
There was no response to the motion for summary judgment.  The trial court granted summary judgment in
Clementes favor.  Also, because no
answer was filed by the Estate of Felipe Gonzales, the trial court entered a
default judgment in Clementes favor against the estate. 

            Silbiano
and Jose appeal[3] the trial
courts grant of the partial motion for summary judgment.  They contend that the trial court erred when
it allowed a collateral attack on a probate judgment, that the court erred in
entering a final judgment because there is no judgment in the record disposing
of the Estate of Marcos Gonzales, and erred in granting summary judgment
because there were issues of material fact precluding recovery on the parol
sale of land and adverse possession claims. 
We find the issue of collateral attack inadequately briefed and conclude
no judgment against the estate of Marcos was necessary to make the courts
summary judgment an appealable order. 
However, because we find that fact issues were created by deposition
excerpts attached by Clemente to his summary judgment motion, we reverse the
trial courts summary judgment and remand the case for further proceedings in
accordance with this opinion.  

I.         Issue Complaining of Alleged Collateral
Attack Is Inadequately Briefed

 

            Silbiano and
Jose contend the trial court erred in allowing a collateral attack upon the
probate judgment, which was merely a determination of heirship.  Their entire argument is included below:

There
was a judgment in the probate court, the same parties were parties to the
probate action, and the issue of ownership of the real property in question
could have been raised in the first suit. 
Appellees [sic] in the trial court seek to attack the issue of ownership
so the property they claim ownership of falls out of the purview of the probate
judgment after the judgment was rendered. 
The Court should reverse and render a judgment of dismissal with prejudice
as to all issues and all parties. 

 

            Rule 38.1(i)
requires that a brief contain a clear and concise argument for the contentions
made, with appropriate citations to authorities and to the record.  Tex. R.
App. P. 38.1(i).  Bare assertions
of error, without argument or authority, waive error.  Enbridge
Pipeline (East Tex.) L.P. v. Avinger Timber, L.L.C., 326 S.W.3d 390, 414
(Tex. App.Texarkana 2010, pet. filed); see
Fredonia State Bank v. Gen. Am. Life Ins. Co., 881 S.W.2d 279, 28485 (Tex.
1994) (discussing long-standing rule that point may be waived due to
inadequate briefing).  

            Silbiano and
Joses argument wholly fails to comply with the requirements of Texas Rule of Appellate
Procedure 38.1(i).  They have waived this
point, and we decline to address it.  We
overrule their first point of error. 

II.       The Trial Courts Judgment Was Final 

 

            Silbiano
and Jose complain that no final judgment can be entered since [t]here is still
one defendant outstanding, The Estate of Marcos Gonzales.  We have previously stated, It has long been
settled that the estate of a decedent is not a legal entity and may not sue
or be sued as such.  Miller v. Estate of Self, 113 S.W.3d
554, 556 (Tex. App.Texarkana 2003, no pet.) (citing Price v. Estate of Anderson, 522 S.W.2d 690, 691 (Tex. 1975)).  A suit seeking to establish the liability of
an estate should be filed against the personal representative or, in certain
circumstances, the heirs or beneficiaries.  Id. 

            Suit against
Marcos estate was brought through Silbiano as the personal representative of
the estate.  However, the probate court
decided no administration of this estate was necessary, and service on behalf
of the estate could not be accomplished through Silbiano.  As Silbiano and Jose were only served on
behalf of the estate of Felipe and in their individual capacity, the estate of
Marcos was not properly served with the suit, and Clemente did not choose to
sue the heirs of Marcos estate or otherwise exhibit an intent[4]
to do so.[5]   Thus, the estate of Marcos was not properly
before the court. 

            In these
circumstances, a judgment which disposes of all named parties except one who
had never been served and did not answer is final for purposes of appeal and stands
as if there had been a discontinuance as to that party.  M.O.
Dental Lab v. Rape, 139 S.W.3d 671, 674 (Tex. 2004) (quoting Youngstown Sheet & Tube Co. v. Penn,
363 S.W.2d 230, 232 (Tex. 1962)).  We
find the trial courts judgments finally disposed of all parties and issues
properly before the court.  This point of
error is overruled.     

III.      Genuine Issues of Material Fact Were
Created by Summary Judgment Evidence

 

            Silbiano and
Jose failed to file a response to the motion for summary judgment and failed to
plead any defense that would preclude summary judgment.  Thus, the trial court granted Clementes
motion, specifying that Silbiano and Jose were precluded from asserting any
claim or right of title to the property. 
Silbiano and Jose assert that material fact issues were created by the
evidence Clemente attached to his motion. 
We agree. 

            We review de
novo a trial courts summary judgment.  Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005).  In a traditional
motion for summary judgment, the movant has the burden to show there is no
genuine issue of material fact and it is entitled to judgment as a matter of
law.  Nixon
v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985).  Thus, a nonmovant has no burden to respond to
a traditional motion for summary judgment unless the movant conclusively
establishes each element of its cause of action as a matter of law.  RhonePoulenc,
Inc. v. Steel, 997 S.W.2d 217, 22223 (Tex. 1999).  The trial court may not grant summary
judgment by default because the nonmovant did not respond to the summary
judgment motion when the movants summary judgment proof is legally
insufficient.  Id. at 223.

            During
our analysis of Clementes traditional motion for summary judgment, and in
deciding whether there is a disputed material fact issue which precludes
summary judgment, proof favorable to Silbiano and Jose will be taken as true
and every reasonable inference will be indulged in their favor.  Limestone
Prods. Distrib., Inc. v. McNamara, 71 S.W.3d 308, 311 (Tex. 2002); Nixon, 690 S.W.2d at 54849 (Tex. 1985).


            Attached to
the motion was an affidavit filed by Clemente averring:

 

my
parents . . . told me that the house was mine and they were giving it to
me.  At no time did Felipe Gonzales or
Marcos Gonzales ever reside in the residence.  On or about the 30th day of May, 1970, I moved
into the home and I have resided there continuously, openly, and obviously
since that date and I have paid my parents back all of the initial down
payment, paid the mortgage payments, property taxes, and I have made valuable
improvements on the property, such as replacing the roof twice, since 1970.

 

            Clementes
motion for summary judgment also included Deposition Excerpts from Silbiano
Gonzales . . . as Exhibit D.  The
deposition pages contained brackets around certain portions of testimony.  In these bracketed excerpts, Silbiano stated
that he had no evidence that the property was not given to Clemente by his
parents, admitted his knowledge that Clemente had paid the entire purchase
price for the property, and had made valuable improvements thereon.  He continued:

A.  
Ifbecause I think what he wanted to do was to give Clemente the
house.  

 

Q.  
Okay. 

 

A.  
But he didntyou know, he had never really paid for it because it wasnt
his. 

 

Q.  
Okay. 

A.   He didnt have to pay for it. 

 

Q.   Okay. 
So you believe that it was your dads intention to give him the
house.  Correct?

 

A.  
Helets say he wanted to, if he paid him for it.    

 

Q.   Okay. 
So if Clemente paid for the house, you believe that your dads intention
was to give him the house.  Correct?

 

A.  
Well, yes. 

. 


            But Clemente
did not redact portions of the attached deposition pages which were excluded
from the bracketed excerpts.  As a
result, the reader was able to view the following excerpts of Silbianos
testimony:  

Q.   Okay. 
Now, so the Jewell property, theres a down payment made, and then Mr.
Clemente Gonzales pay for the propertypays the down payment back on the
property.  Is that correct?

 

A.  
No. 

 

Q.  
Okay.  You said Mr. Clemente
Gonzales paid for the property.  Right?

 

A.  
Yes. 

 

Q.  
All right.  So how did he pay for
the property?

 

A.   The remainder of the mortgage, my dad said
they could pay the rentpay it as rent. 
But he never paid the down payment. 

 

            .
. . .

 

A.   I didnt say he was going to give him the
house; he was going to pay the mortgage. 

 

Q.  
Okay. 

A. 
That was his rent.  

 

Silbiano also testified that Felipe would help Clemente on
some payments related to the home.  

            There was no
indication that the courts review should be limited only to the portions of
the deposition in brackets.  Rather, at
the beginning of his summary judgment motion, Clemente generally referenced the
entirety of Exhibit D.  He also included
one deposition page which did not contain any bracketed portions.  In other portions of the motion for summary
judgment, references were made to the deposition of Silbiano, such as page/line
22:8; and attached as exhibit D.  If
such a reference were taken to mean only the testimony on page 22 line 8 was
submitted it is: [6]All right. And
is it true that Clemente . . .  The fact
that parts of the deposition were marked with brackets does not necessarily
mean that only those portions are offered; conceivably the brackets were added
to call an emphasis to that portion of the testimony.   We consider all of Exhibit D in examining
whether the evidence was sufficient to entitle Clemente to summary judgment as
a matter of law. 

            The partial
summary judgment motion and the trial courts summary judgment focused on the
claims for parol sale of land and adverse possession.  

            Under the
doctrine of partial performance as applied to the statute of frauds, an oral
contract for the purchase of real property is enforceable if the purchaser: (1)
pays the consideration; (2) takes possession of the property; and (3) makes
permanent and valuable improvements on the property with the consent of the
seller, or, without such improvements, other facts are shown that would make
the transaction a fraud on the purchaser if the oral contract was not enforced.  Boyert
v. Tauber, 834 S.W.2d 60, 63 (Tex. 1992) (citing Hooks v. Bridgewater,  229
S.W. 1114, 1116 (Tex. 1921)).  These
steps are seen as sufficient evidence of the agreement because they provide
affirmative corroboration of the agreement by both parties to the agreement.  Id. (citing
Hooks, 229 S.W. at 1116).  

            Silbiano was
never a party to any conversation between Clemente and his parents about the
Jewell property.  He admitted initially that
Clemente paid the full purchase price of the property.  Later, Silbiano testified that he never paid
the down payment and only paid rent.  Looking
at this evidence in the light most favorable to Silbiano, the testimony
suggests that although the amount of payments could have totaled the full
purchase price of the property, the payments could be classified as rental payments.  Also, Clemente was 

required
to do more than give evidence of the three elements required by Hooks v. Bridgewater to relieve a parol
sale of land from the Statute of Frauds. 
The conveyance itself must be proven, and its existence may not be inferred
solely from the existence of the three elements, especially since appellant
denies that any oral conveyance occurred and asserts that only a tenancy
existed.

 

Hines v. Taylor,
476 S.W.2d 81, 83 (Tex. Civ. App.Houston [14th Dist.] 1971, no writ).  Silbiano testified (in a bracketed portion of
the testimony) that he just kn[e]w [the property] wasnt given to [Clemente].  We find that the summary judgment evidence
created fact issues with regard to the parol sale of land.  

            Next, adverse
possession is the actual and visible appropriation of real property, commenced
and continued under a claim of right that is inconsistent with and is hostile
to the claim of another person.  Tex. Civ. Prac. & Rem. Code Ann. §
16.021(a) (West 2002). To prove adverse possession, a claimant must establish
six elements:  (1) actual possession of
the disputed property (2) that is open and notorious, (3) that is peaceable,
(4) under a claim of right, (5) that is adverse or hostile to the claim of the
owner, and (6) consistent and continuous for the duration of the statutory
period.  Glover v. Union Pac. R.R., 187 S.W.3d 201, 213 (Tex. App.Texarkana
2006, pet. denied). 

            In
this case, the dispute centers upon the elements of open, notorious possession,
and hostility.  Manifestation of adverse
possession under circumstances must be so notorious that it is not susceptible
of explanation consistent with the existence of the landlord-tenant
relationship Dyer v. Cotton, 333 S.W.3d 703, 713 (Tex. App.Houston
[1st Dist.] 2010, no pet.) (quoting Radford
v. Garza, 586 S.W.2d 656, 661 (Tex. Civ. App.Corpus Christi 1979, no
writ)).  Silbiano testified Clemente was
making rental payments.  This created a
fact issue as to whether Clemente and his parents had a landlord-tenant
relationship.  In this summary judgment
context, once the possibility of landlord-tenant relationship is established,
possession by the tenant will not be considered adverse to the owner . . . unless
and until (1) there is a repudiation of the relationship and the assertion of a
claim of right adverse to the owner, and (2) notice of such repudiation and
adverse claim is given to the owner.   Radford, 586 S.W.2d at 661.  If the rule were otherwise, it would be
extremely hazardous for an owner to enter into any landlord-tenant
relationship.  Id.; Cleveland v. Hensley,
548 S.W.2d 473, 475 (Tex. Civ. App.Texarkana 1977, no writ).   These
requirements were not addressed by the summary judgment evidence.  We find that the evidence does not
indisputably show a claim of exclusive title. 


            Because fact
issues precluded the entry of summary judgment, we sustain Silbiano and Joses
last point of error. 

IV.      Conclusion 

 

            We reverse the trial courts
entry of summary judgment against Silbiano and Jose and remand for further
proceedings in accordance with this opinion. 

 

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date Submitted:          December
5, 2011       

Date Decided:             January
13, 2012











[1]Originally appealed to the Third Court of Appeals,
this case was transferred to this Court by the Texas Supreme Court pursuant to
its docket equalization efforts.  See Tex.
Govt Code Ann. § 73.001 (West 2005). 
We are unaware of any conflict between precedent of the Third Court of
Appeals and that of this Court on any relevant issue.  See
Tex. R. App. P. 41.3.

 





[2]The
probate court decided that an appointment of an administrator was not necessary
for the Estate of Marcos, who had died intestate in 1987 and had predeceased
her husband. 

 





[3]In
this appeal, no challenge was brought to the default judgment entered against
Felipes estate.  Silbiano and Jose only
list themselves as appellants in this cause. 






[4]Clementes
counsel clarified, in a hearing before the court there are three
Defendants.  Essentiallytechnically
there were four at one point.  

 





[5]Moreover,
Marcos and Jose were both listed on the deed to the property, Marcos passed
intestate, and her community property would have passed to Felipe.  Tex.
Probate Code Ann. § 45 (West 2003). 





[6]Other
similar references were to page/line 24:7, and attached as Exhibit D.  If page 24 line 7 only was to be the offer it
would read:  Q. The same thing applies
to the Jewell . . .